IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMEL PARKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| -v- § | Civil No. _____ |
| § | |
| SOUTHWEST AIRLINES CO., § | |
| § | |
| Defendant. § | |

**PLAINTIFF JAMEL PARKER'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Southwest Airlines subjected black employees, including Jamel Parker, to extreme race discrimination.

Southwest allowed its employees to create the "WB," a whites-only break room. Although this level of blatant racism sounds almost unbelievable, this whites-only area for white Southwest employees existed for years until a recent renovation removed the room.

Additionally, in 2017, at Houston Hobby gate 45, a Southwest gate controlled by the airline, black employees were horrified to find a noose made of bungee cords. Nooses are an obvious reference to the history of lynching blacks and are hung for the purpose of intimidation and discrimination.

Southwest also holds black employees to different standards than white employees. Southwest is quick to fire blacks while whites are given lesser discipline and chances to improve conduct.

In this case, Southwest summarily fired Mr. Parker, alleging he damaged a power cord and did not report it. However, similarly situated white employees who engaged in nearly identical behavior were not terminated.

- Scott Weaver, a white employee, hit a belt loader with a baggage cart. Mr. Weaver did not report the incident. It was only after camera footage was reviewed that Mr. Weaver, confronted with the evidence, finally admitted to the accident. Mr. Weaver was only given a letter of instruction, the lowest level of discipline an employee can receive.

- Burke Jimmerson, a white employee, hit a tug with the tug he was driving. Only the employee driving the tug Mr. Jimmerson hit reported the accident. Mr. Jimmerson "was questioned about the incident 25 minutes later, but did not report it before he was asked about it," according to the Transport Workers Union's Accident Investigation Form. Mr. Jimmerson was only given a final warning letter.

Why would Southwest terminate Mr. Parker while giving Mr. Weaver a slap on the wrist and Mr. Jimmerson a chance to correct his conduct? The answer is Southwest Airlines discriminates on the basis of race.

# I.
# PARTIES

1. Jamel Parker is an individual who resides in Harris County, Texas.

2. Defendant Southwest Airlines Co. is a Texas corporation headquartered in Dallas County, Texas. Defendant Southwest Airlines Co. may be served with process by serving it registered agent, Corporation Service Company d/b/a CSC-Lawyers Inco. at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

# II.
# JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear the merits of Plaintiff's Section 1981 claims under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has original jurisdiction to hear the merits of Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

4. Venue is appropriate in the Southern District of Texas because the acts giving rise to this suit occurred in Harris County, Texas.

## III.
## FACTS

5. Jamel Parker first started working for AirTran Airlines as a ramp agent at Houston Hobby Airport on or about September 12, 2008.

6. After AirTran merged with Southwest Airlines, Mr. Parker became a Southwest employee on or about July 1, 2013.

**A. Southwest Airlines subjected black employees, including Jamel Parker, to extreme race discrimination.**

7. White employees made their own segregated break room, referred to as the "WB" for "White Breakroom."

8. Mr. Parker first learned about the segregated break room in August 2013, just a month after he started.

9. Southwest knew about the White Breakroom; the existence of the segregated breakroom was common knowledge.

10. Mr. Parker's supervisor, Philip Ford, was aware of the White Breakroom's existence.

11. Southwest failed to have the White Breakroom removed.

12. The only reason the White Breakroom does not still exist today is because of a renovation that occurred in 2016 or 2017 that turned the room into a supervisor office.

13. Another example of the race discrimination black Southwest employees were subjected to at Houston Hobby was when a noose was hung at gate 45, a Southwest gate controlled by the airline.

14. Nooses are an obvious reference to the history of lynching blacks and are hung for the purpose of intimidation and discrimination.

**B. Southwest summarily terminated Mr. Parker for allegedly damaging a cable and not reporting it.**

15. On or about April 21, 2017, Mr. Parker was driving a pushback (a vehicle used to push an aircraft away from a gate).

16. While in reverse, the tow bar attached to the pushback got caught on a power cable under the jet bridge.

17. Mr. Parker did not believe he had caused any damage.

18. Indeed, there was no visible sign of any damage.

19. Then, on April 28, 2017, Southwest terminated Mr. Parker claiming he damaged the power cord and did not report it.

**C. Southwest Airlines did not fire at least two white employees who engaged in the same/substantially similar acts as Mr. Parker.**

20. Southwest did not terminate similarly situated white employees who engaged in nearly identical behavior.

21. For example, Scott Weaver hit a belt loader with a baggage cart.

22. Mr. Weaver is white.

23. Mr. Weaver did not report the accident.

24. It was only after camera footage was reviewed that Mr. Weaver, confronted with the evidence, finally admitted to the accident.

25. Southwest only gave Mr. Weaver a letter of instruction, the lowest level of discipline that can be given to an employee.

26. Southwest summarily terminated Mr. Parker while it gave Mr. Weaver the lowest discipline possible.

27. For example, on November 2, 2016, Burke Jimmerson hit a tug (the vehicle that pulls baggage carts) with the tug he was driving.

28. Mr. Jimmerson is white.

29. Although the employee driving the tug that Mr. Jimmerson hit reported the accident, Mr. Jimmerson did not.

30. It was only after Mr. Jimmerson was confronted about the accident did he finally admit to it.

31. Southwest only gave Mr. Jimmerson a final warning letter.

32. Southwest summarily terminated Mr. Parker while it gave Mr. Jimmerson a chance to correct his conduct.

**D. Southwest Airlines lied—falsely claiming there was a difference between Mr. Parker's accident and Mr. Jimmerson's accident in an effort to justify its discrepancy in treatment.**

33. Confronted with the evidence (these two examples) that white employees are treated more favorably than black employees, Southwest manufactured an explanation for the difference in treatment.

34. Southwest proffered that Mr. Parker's accident was different than Mr. Jimmerson's because Mr. Parker had not disclosed his accident and Mr. Jimmerson did.

35. This statement was a lie.

36. Mr. Jimmerson did not disclose his accident.

37. In the course of the EEOC process, Mr. Parker obtained the Accident Investigation Form concerning Mr. Jimmerson:

 

**TWU**
Transport Workers Union of America, AFL-CIO
Air Transport Division
Local 555
Southwest Airlines Ramp, Operations, & Provisioning

## Accident Investigation Form

This report is to be filled out by a TWU Safety Rep please date sign and include any pictures

Date of Accident  11-2-16          Time  1500

Persons involved  Burke Jimmerson, Esheila Grinnell

Location of accident  Gate 40 safety zone

Name of any witness's  _____

Equipment involved  2 bag tugs, 7469 & 22123

If it was outside, then describe the weather and surface conditions
85° partly cloudy

With as much detail as possible, please describe what happened
Esheila was driving tug 22123 on the service road behind the blast fence heading from int'l towards gate 40. Burke was cutting across the safety zone in tug 7469 across gate 40. The front of Esheila's tug collided with the side of Burke's tug. Neither employee was injured. Esheila parked at gate 40 & immediately reported the accident. I was immediately called in and watched the video with Esheila, MRO Rusty Drew & MRO Dan O'brian. MRO Rusty stated that Burke was questioned about the incident 25 minutes later, but did not report it before he was asked about it. The tugs were tagged out & GSE called to inspect them. There only appears to be minor scrapes. The spot of the airport near gate 40 is very confusing. All service road lanes disappear and there is a very busy service dock with a lot of trucks and 18 wheeler traffic. There are 3 lanes of traffic from the tunnel that intersect with the service road from int'l behind the blast fence. There is also a service road that runs behind the 40 gates.

Name  Moe W                                   Date  11-2-16

38. According to the Form, Mr. Jimmerson "was questioned about the incident 25 minutes later, *but did not report it before he was asked about it.*" (Emphasis added.)

39. The real reason Southwest Airlines terminated Mr. Parker was because of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

40. Plaintiff timely filed a charge of discrimination against defendant with the Equal Opportunity Commission (EEOC).

41. Plaintiff files this complaint within 90 days after receiving a notice of right to sue from the EEOC.

42. All conditions precedent to the bringing of this suit have been satisfied or fulfilled.

## V.
## RACE DISCRIMINATION UNDER TITLE VII

43. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

44. Defendant's actions in discriminating against Mr. Parker were undertaken because of his race.

45. Defendant's actions constitute violations of the Title VII of the Civil Rights Act of 1964.

46. Due to Defendant's actions, Mr. Parker has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

47. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Parker's federally-protected rights.

## VI.
## RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

48. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

49. Defendant's actions in discriminating against Mr. Parker were undertaken because of his race.

50. Defendant's actions constitute a violation of 42 U.S.C. § 1981.

51. Due to Defendant's actions, Mr. Parker has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

52. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Parker's federally-protected rights.

53. Defendant's acted with malice or reckless indifference to the rights of Mr. Parker, thereby entitling him to an award of punitive damages.

## VII.
## JURY DEMAND

54. Plaintiff hereby makes a demand for a trial by jury on all issues, claims, and defenses in this action.

## VIII.
## DAMAGES

55. WHEREFORE, Plaintiff Jamel Parker respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, he be awarded:

> i. Back pay, including but not limited to, lost wages, and other employment benefits;

ii. Front pay, including but not limited to wages, and other employment benefits;

iii. Judgment against Defendants for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

iv. Actual damages;

v. Punitive damages;

vi. Injunctive relief;

vii. Judgment against Defendants for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit;

viii. Prejudgment and post-judgment interest as allowed by law; and

ix. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Summons be issued, and that upon a trial on the merits Plaintiff be awarded the relief requested in this Complaint and such other and further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ Julie L. St. John*
Julie L. St. John *(Attorney-in-Charge)*
Texas Bar No. 24106460
S.D. Texas Bar No. 3139258
Robert J. Wiley*
Texas Bar No. 24013750
S.D. Texas Bar No. 596499
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*

ROB WILEY, P.C.
1651 Richmond Ave.
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
jstjohn@robwiley.com

ATTORNEYS FOR PLAINTIFF