# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMEL PARKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civ. A. No. 4:18-cv-03334 |
| -v- | § | |
| | § | JURY TRIAL DEMANDED |
| SOUTHWEST AIRLINES CO. | § | |
| | § | |
| Defendant. | § | |

---

### PLAINTIFF JAMEL PARKER'S RESPONSE TO DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION FOR SUMMARY JUDGMENT

---

**WILEY WHEELER, P.C.**

*/s/ Julie L. St. John*
Julie L. St. John
Texas Bar No. 24106460
S.D. Texas Bar No. 3139258
Robert J. Wiley*
Texas Bar No. 24013750
S.D. Texas Bar No. 596499
*Board Certified in Labor and
Employment Law by the Texas Board of
Legal Specialization*

1651 Richmond Ave.
Houston, Texas 77006
Telephone:  (713) 337-1333
Facsimile:  (713) 337-1334
jstjohn@wiley-wheeler.com

**ATTORNEYS FOR PLAINTIFF
JAMEL PARKER**

## **TABLE OF CONTENTS**

I.  BRIEF INTRODUCTION OF THE DISPUTE ............................................................. 6

II. STATEMENT OF FACTS ........................................................................................ 7

    A.   Southwest Airlines acquired AirTran Airlines.  As part of the acquisition, Jamel Parker became an employee of Southwest in 2013. .................................................. 7

    B.   Southwest terminated Parker for allegedly causing damage to a power cord and not reporting it. ............................................................................................................. 7

    C.   Southwest says it has a policy.  But when a White employee violates it, Southwest does not apply the policy as written. ...................................................................... 8

    D.   Southwest claims it fires employees who do not immediately report accidents.  But when White employees fail to report, they are not fired. ....................................... 10

    E.   In contradiction to its treatment of White employees, Southwest fires minority employees even when they do report accidents. ..................................................... 11

    F.   The indirect evidence surrounding the circumstances of Southwest's termination of Parker shows a workplace permeated by race discrimination. ................................ 11

    G.   The issue of whether Southwest terminated Parker because of his race is one of first impression for this Court. ..................................................................................... 13

III. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ........... 13

IV. STANDARD OF REVIEW ..................................................................................... 13

V.  ARGUMENT AND AUTHORITIES ....................................................................... 14

    A.   Southwest fired Parker but failed to enforce its policy or terminate a White employee under nearly identical circumstances, establishing a *prima facie* case. . 15

    B.   Southwest's disparate enforcement of its policies and discipline at Hobby Airport would allow a reasonable jury to conclude that Southwest's proffered reason for terminating Parker was mere pretext. ...................................................................... 17

        1.   The evidence on record would allow a reasonable jury to conclude that Southwest's reason for charging Parker with a violation of BPOC 16 but failing to charge Jimmerson was mere pretext for discrimination. .................................. 17

2. Southwest did NOT terminate at least two White employees who had accidents they FAILED to immediately report. However, Southwest did terminate two minority employees who DID report their accidents. This differential treatment casts further doubt on Southwest's proffered reason for terminating Parker. ...... 18

C. Indirect evidence of an environment permeated by race discrimination is both relevant and probative to whether Southwest's termination of Parker was motivated by race. ................................................................................................................... 20

D. The Court must review this case *de novo* without reliance on a labor arbitration decision where race discrimination was not argued or decided. ............................ 21

VI. CONCLUSION ........................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)……………………………………………………21, 22

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)……………………………………………..13, 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)……………………………………………..13

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)……………………………………………21

*Morris v. Town of Independence*,
    827 F.3d 396 (5th Cir. 2016)………………………………………15

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir. 2001)………………………………………15

*Polanco v. City of Austin*,
    78 F.3d 986 (5th Cir. 1996)……………………………………..17, 20

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133 (2000)……………………………………………14

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014) ………………………………………14

*Tratree v. BP North America Pipelines, Inc.*,
    390 Fed. Appx. 386 (5th Cir. 2010)…………………………….20

**Rules**

Fed. R. Civ. P. 56(a)………………………………………………13

Fed. R. Civ. P. 56(e)(3)……………………………………………...13

**Statutes**

42 U.S.C. § 1981 ("Section 1981")……………………………………………..6, 13

42 U.S.C. §§ 2000e, et seq. Civil Rights Act of 1964 ("Title VII")…………6, 13

Plaintiff Jamel Parker asks the Court to deny Defendant's Motion for Summary Judgment and respectfully shows the following:

## I.
## BRIEF INTRODUCTION OF THE DISPUTE

This is a case where Southwest Airlines terminated Jamel Parker because of his race in violation of Title VII of the Civil Rights Act and Section 1981.  Southwest enforces its polices differently depending on an employee's race and terminates minority employees while White employees receive lesser discipline.

In this case, Southwest fired Parker, who is Black, alleging he damaged a power cord and did not immediately report it.  However, when a White employee clearly violated the same policy, Southwest failed to enforce the policy.  Southwest retained the employee and only issued a warning.  When another White employee caused an accident he did not report, Southwest gave him the lowest level of discipline possible.  Conversely, Parker presents evidence that Southwest terminated at least one Black and one Hispanic employee even though both immediately reported accidents they caused.

Furthermore, contextual evidence in this case shows a workplace at Houston-Hobby Airport where discrimination thrives: (1) nooses, (2) racist flyers, (3) a whites-only breakroom, and (4) a survey where more than half of ground operations employees who responded said Southwest management at Hobby supported diversity "not so much" or "not at all."  This indirect evidence further allows a jury to doubt Southwest's proffered reason for terminating Parker and conclude the real reason was discrimination based on race.

# II.
# STATEMENT OF FACTS

**A. <u>Southwest Airlines acquired AirTran Airlines.  As part of the acquisition, Jamel Parker became an employee of Southwest in 2013.</u>**

Jamel Parker first started working for AirTran Airlines as a ramp agent in Atlanta in 2008.  Exhibit 1, Deposition of Jamel Parker ("Parker Depo"), 16:11-13; 51:11-16. Southwest acquired AirTran in 2012 and all AirTran ground operations employees were transitioned over to Southwest.  Exhibit 2, Deposition of Southwest Airlines' Corporate Representative ("SWA Corp Rep Depo"), 14:14-23.  As part of the transition, Parker moved to Houston to work as a ramp agent for Southwest at Hobby in 2013.  *Id.* at 14:14-23; *see* Ex. 1, Parker Depo, 57:7-11.

**B. <u>Southwest terminated Parker for allegedly causing damage to a power cord and not reporting it.</u>**

On April 21, 2017, Southwest assigned Parker to work an originator flight (the first flight of the day) from Gate 4 at Hobby.  Ex. 1, Parker Depo, 111:23-25, 112:1-6.  When Parker arrived, the equipment he needed was not at the gate.  *Id.* at 112:7-25, 113:1-17. Accordingly, Parker located a radio and contacted the duty supervisor to request assistance. *Id.*

Two of the items needed to get the flight out were a pushback and a tow bar (the vehicle that is used to push the plane back from a gate and the bar that attaches the vehicle to the plane).  *Id.* at 113:24-25.  There were a pushback and a tow bar at Gate 3 that were not in use, so Parker went to get both.  *Id.* at 114:1-6.  Parker attached the tow bar to the

pushback and began to back up, attempting to maneuver around a staircase that was behind him. *Id.* at 114:13-14, 115:21-23.

During this process, the tow bar connected with a power cord on the ground (a cord that connected the jet bridge to the plane). *Id.* at 117:2-3. Parker got off the pushback, removed the tow bar from the power cord, checked the power cord for any damage, looked to see if the power cord had been disconnected from the plane, and also listened for any alarm or signal that the plane no longer had power. *Id.* at 117:7-13.

As there was no sign of damage or loss of power, Parker continued working, intending to tell the supervisor he had already called for when that person arrived. *Id.* at 117:14-21. Unfortunately, Parker forgot. *Id.* at 123:8.

Southwest suspended Parker approximately four days after the incident occurred and terminated him on April 28, 2017. *Id.* at 125:12-25, 126:1-2; Exhibit 3, Results of Jamel Parker Fact-Finding ("Parker Fact-Finding").

## C. <u>Southwest says it has a policy. But when a White employee violates it, Southwest does not apply the policy as written.</u>

On November 2, 2016, Burke Jimmerson (White), a Southwest ramp agent who works at Hobby caused an accident that resulted in damage. Exhibit 4, Results of Burke Jimmerson Fact-Finding ("Jimmerson Fact-Finding"). It is undisputed that Jimmerson did not immediately report the accident he caused. *Id.*; *see also* Ex. 2, SWA Corp Rep Depo, 81:1-3.



TO:       Burke Jimmerson – e117010

FROM:     Daniel O'Brian – MRO - HOU

DATE:     November 15, 2016

SUBJ:     Results of Fact Finding - Safety - **Final Letter of Warning** & 2 Disciplinary Days Off

---

A Fact Finding meeting was held on Tuesday November 11, 2016 to discuss the incident that occurred near gate 40 and your failure to immediately report said incident, on November 2, 2016. Present at this meeting were you, Union Representatives Oscar Camara, MRO Jason Ulm and Ally Grigas.

After completing the investigation into this matter, and after review of the testimony and documents provided at the meeting, we have concluded that you failed to maintain situational awareness or report the incident immediately. You must report any damage or injury to any Leader, Supervisor or Manager, immediately after an incident occurs. Safety is not an option and you must immediately take a step back and make Safety first on every flight, every day.

This behavior is unacceptable, and is in violation of the Southwest Airlines Ground Operations Basic Principles of Conduct, including, but not limited to, the following:

4.      Complete coordination with Coworkers and Supervisors is required in order to provide harmonious working conditions.

14.     Performing your job in a careless, negligent, or unsatisfactory manner.

28.     Failure to comply with safety rules or regulations.

Based on the above and because of your actions, this letter will serve as a **Final Letter of Warning**. Additionally, you will be subject to two (2) disciplinary days off without pay. The disciplinary days off without pay will be at the discretion of your Station Leaders. Please be advised that the behavior that you have displayed will not be tolerated. Any further violations of this nature may result in discipline, up to and including termination. If you are unclear as to what is expected of you, or if there is anything that we can do to assist you, please do not hesitate to contact a Supervisor or Manager.

---

Accordingly, Jimmerson's actions violated Southwest's Basic Principle of Conduct 16 which states: "Failure to immediately report to your Supervisor an accident or incident involving personal injury or damage to equipment, facilities, aircraft, and/or other property in the workplace shall warrant termination." Exhibit 5, Southwest Airlines' Basic Principles of Conduct ("Southwest BPOC").

However, Southwest failed to apply BPOC 16 despite – based on Southwest's own documentation – Jimmerson's violation of the policy. *See* Ex. 4, Jimmerson Fact-Finding; Ex. 5, Southwest BPOC.

---

**D.** **Southwest claims it fires employees who do not immediately report accidents.  But when White employees fail to report, they are not fired.**

Despite the plain language of its policy, Southwest did not terminate Jimmerson. Ex. 4, Jimmerson Fact-Finding.

Additionally, on October 2, 2017, Scott Weaver (White), a Southwest ramp agent who works at Hobby, caused an accident he did not immediately report.  *See* Exhibit 6, Results of Scott Weaver Fact-Finding ("Weaver Fact-Finding"); Ex. 2, SWA Corp Rep Depo, 71:16-17.  Southwest did not terminate Weaver, instead giving him the lowest level of discipline possible.  *See* Ex. 2, SWA Corp Rep Depo, 73:20-25, 74:1; *see also* Ex. 6, Weaver Fact-Finding.  This is yet another example of different treatment of similarly situated employees.

First, Southwest alleged it did not terminate Weaver because his accident did not cause damage.  Exhibit 7, Southwest Airlines' EEOC Position Statement ("SWA Position Statement"), SWA 0646.   But when Plaintiff deposed Southwest's corporate representative, Southwest testified that damage was irrelevant:

> Q.    But if they didn't report it, would they be fired?
>
> A.    Yes, they would.
>
> Q.    What if no damage actually occurred, would they still be fired if they didn't report?
>
> A.    If no damage occurred and they didn't report an incident, they would still be terminated.

Ex. 2, SWA Corp Rep Depo, 42:14-20.

Therefore, Southwest cannot distinguish Parker from Weaver based on damage.

Then, Southwest ***changed its story*** to allege Weaver was not fired because someone else immediately reported the accident.  *See id.* at 88:5-14.

Southwest's attempts to split hairs and shift explanations which would allow a jury to infer that Parker and Weaver are similarly situated.

**E.  In contradiction to its treatment of White employees, Southwest fires minority employees even when they do report accidents.**

On April 12, 2015, James Hearns (Black) caused and accident that he immediately reported.  Exhibit 8, Defendant's Responses to Plaintiff's First Set of Interrogatories ("Def's Interrogatory Responses"), 8.  Despite immediately reporting the incident, Southwest terminated Hearns.  *Id.*

On March 29, 2015, Eric Flores (Hispanic) caused an accident that he immediately reported.  *Id.* at 7-8.  Despite immediately reporting the incident, Southwest terminated Flores.  *Id.*

**F.  The indirect evidence surrounding the circumstances of Southwest's termination of Parker shows a workplace permeated by race discrimination.**

As relevant to the discriminatory culture that exists at Southwest at Hobby, Parker produces the following evidence:

- In a recent survey conducted by the Transport Workers Union and released in November 2018, more than half of ground operations workers who participated responded that Southwest management at Hobby supported diversity "not so much" (23.9%) or "not at all" (37%).  Exhibit 9, Transport Workers Union Survey ("TWU

Survey"), Parker - 0320.  Hobby received significantly worse results than nine of the ten other airports surveyed.[1]  *See id.*

- An anonymous Southwest employee at Hobby commented as part of the TWU survey: "(T)he ramp is run like an old southern plantation.  We get worked without getting a lunch.  There are constant violations of our contract . . . I feel as though this station would run better if this wasn't such a negro/Hispanic heavy station."  *Id.*

- On at least two recent occasions, ground operations employees at Hobby found nooses at the airport in secured areas – one hung at a gate and one placed in a baggage cart.  Ex. 2, SWA Corp Rep Depo, 90:21-25, 91:1-5, 99:20-25, 100:1-6; *see also*, Exhibit 10, Picture of Noose Hung at Houston-Hobby ("Noose").

- A racist flyer with the following image was distributed to promote a "Station BBQ." Exhibit 11, Station BBQ Flyer ("Flyer").



- A whites-only breakroom existed at Hobby, and Phillip Ford, a supervisor, warned Parker that "it was just best to stay away from that area."[2]  Ex. 1, Parker Depo, 161:14-21.

---

[1] Phoenix-Sky Harbor received similar results to Hobby.  See Ex. 9, TWU Survey, Parker - 032.
[2] Southwest denies the existence of a whites-only breakroom.  *See* Ex. 2, SWA Corp Rep Depo, 109:16-17.

**G. The issue of whether Southwest terminated Parker because of his race is one of first impression for this Court.**

The issue of race discrimination was not raised, argued, or decided at the labor arbitration proceeding related to Southwest's termination of Parker. *See* Dkt. No. 15-21 and 15-28. Accordingly, whether Southwest terminated Parker because of his race is an issue of first impression for the Court.

## III.
## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

1) The Court must decide whether Plaintiff has established a *prima facie* case of race discrimination under Title VII and/or Section 1981.

2) The Court must decide whether a fact issue exists such that a reasonable jury could disbelieve Defendant's stated reason for termination.

## IV.
## STANDARD OF REVIEW

Summary judgment is appropriate only where the record contains no genuine dispute as to any material fact, so that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the moving party meets its burden is the nonmoving party required to respond to show a genuine dispute of material fact. *See* FED. R. CIV. P. 56(e)(3). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In making its decision, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).  "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866.  As long as "reasonable minds could differ as to the import of the evidence," such that factual disputes remain, the motion for summary judgment must be denied.  *Anderson*, 477 U.S. at 250.

**V.**
**ARGUMENT AND AUTHORITIES**

Parker presents evidence that Southwest enforces its polices and disciplines employees differently depending on an employee's race.

Southwest charged Parker, who is Black, with a violation of BPOC 16 and terminated him.  However, it failed to charge Jimmerson, who is White, with a violation of the policy and only issued Jimmerson a warning.  Parker and Jimmerson are similarly situated and Southwest treated Jimmerson more favorably than Parker.  Accordingly, Plaintiff has established a *prima facie* case of race discrimination.

Further, Parker casts doubt on Southwest's stated reason for termination by showing minority employees who reported accidents were terminated while White employees were not.  These facts, combined with the evidence of a culture of discrimination among Southwest at Hobby, would allow a reasonable jury to conclude that the real reason Southwest terminated Parker was his race.

**A. Southwest fired Parker but failed to enforce its policy or terminate a White employee under nearly identical circumstances, establishing a *prima facie* case.**

To establish a *prima facie* case for disparate treatment, the plaintiff must show that someone similarly situated outside of the protected class was treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). The Fifth Circuit has established that similarly situated requires nearly identical, but not identical, circumstances. *See Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016).

> The similarly situated analysis is intended to ensure that the challenged action was taken under nearly identical circumstances. Such circumstances exist when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. We have noted, however, that **nearly identical is not synonymous with identical**.

*Id.* (internal citations omitted) (emphasis added).

Here, Plaintiff has identified a White ramp agent (same job and responsibilities), who shared the same supervisors, had their employment status determined by one of the same people (Ally Grigas), and did exactly what Parker did (had an accident that he failed to immediately report), **but** was not terminated (treated more favorably).

| Burke Jimmerson – White | Jamel Parker – Black |
| --- | --- |
| Ramp agent at Hobby airport | Ramp agent at Hobby airport |
| Caused an accident that resulted in damage | Caused an accident that allegedly resulted in damage |
| Did not immediately report the incident | Did not immediately report the incident |
| BPOC 16 **NOT** enforced | BPOC 16 enforced |
| **NOT** terminated | Terminated |

*See* Ex. 4, Jimmerson Fact-Finding; Ex. 3, Parker Fact-Finding.

Jimmerson is a similarly situated employee outside the protected class who Southwest treated more favorably. It is undisputed that Jimmerson, a ramp agent at Hobby, caused an accident that he did not immediately report. *See* Ex. 4., Jimmerson Fact-Finding. According to Southwest, this implicates BPOC 16. *See* Ex. 5, Southwest BPOC. However, Southwest failed to enforce BPOC 16 in Jimmerson's case. *See* Ex. 4., Jimmerson Fact-Finding.

Moreover, Southwest's attempt to argue that Jimmerson is not similarly situated to Parker because someone else reported the accident and Jimmerson was "emphatic that he was physically on his way to report the collision" is disingenuous. Under Southwest's own policy, these facts are irrelevant. The plain language of BPOC 16 has no caveat for someone else reporting – it requires the employee who causes the accident to *immediately* report. *See* Ex. 5, Southwest BPOC.

Southwest also attempts to distinguish Parker from Jimmerson by stating that the discipline was issued by different managers. *See* Dkt. No. 15, 16. However, the evidence shows that Ally Grigas was involved in both Southwest's decision to terminate Parker and Southwest's decision to not charge Jimmerson with a violation of BPOC 16 or terminate him. *Compare* Ex. 3, Parker Fact-Finding, *with* Ex. 4, Jimmerson Fact-Finding.

Overall, Southwest failed to enforce its policy against Jimmerson despite a clear violation and failed to terminate Jimmerson for causing an accident that he did not immediately report, a violation Southwest claims calls for mandatory termination.

The only key difference between Jimmerson and Parker is race.  Accordingly, Parker has presented evidence that a similarly situated employee outside of the protected class was treated more favorably, satisfying Plaintiff's *prima facie* case.

**B.** **Southwest's disparate enforcement of its policies and discipline at Hobby Airport would allow a reasonable jury to conclude that Southwest's proffered reason for terminating Parker was mere pretext.**

Pretext can be established by evidence demonstrating a company's failure to enforce its polices and subject employees to equal discipline regardless of race.  *See Polanco v. City of Austin*, 78 F.3d 986, 979 (5th Cir. 1996).

> In sum, the evidence allowed a reasonable jury to conclude that the City's reason for charging Polanco with aggravated perjury while charging McDonald with bringing discredit, although both men were guilty of giving inaccurate testimony, was merely a pretext for discrimination. Both offenses warranted similar charges and penalties. The failure to give equal treatment to the same offense allowed the jury to assume the presence of mendacity.

*Id.*

> ***1.*** ***The evidence on record would allow a reasonable jury to conclude that Southwest's reason for charging Parker with a violation of BPOC 16 but failing to charge Jimmerson was mere pretext for discrimination.***

Southwest's failure to charge Jimmerson with a violation of BPOC 16 when – based on Southwest's own documentation – he clearly violated the policy casts doubt on Southwest's proffered reason for terminating Parker. *See id.* As in *Polanco*, both Parker's and Jimmerson's offenses warranted similar charges and penalties.  Both Parker and Jimmerson caused accidents that allegedly resulted in damage that they did not immediately report.  However, Southwest treated Parker differently than it treated Jimmerson. *Compare* Ex. 3, Parker Fact-Finding, *with* Ex. 4, Jimmerson Fact-Finding.

Accordingly, Southwest's failure to give equal treatment allows the jury to assume the presence of untruthfulness.

Moreover, Southwest asserts in its Motion that since 2013, when BPOC 16 was amended, it has terminated every employee who it "has learned" violated the policy. Dkt. No. 15, 7. This assertion is patently false given Southwest's failure to terminate Jimmerson.

> ### 2. *Southwest did NOT terminate at least two White employees who had accidents they FAILED to immediately report. However, Southwest did terminate two minority employees who DID report their accidents. This differential treatment casts further doubt on Southwest's proffered reason for terminating Parker.*

Plaintiff presents evidence of five Southwest ramp agents at Hobby who had accidents:

| **Name** | **Race** | **Report** | **Result** |
|:---:|:---:|:---:|:---:|
| Burke Jimmerson | White | No | Not terminated |
| Scott Weaver | White | No | Not terminated |
| Jamel Parker | Black | No | Terminated |
| James Hearns | Black | Yes | Terminated |
| Eric Flores | Hispanic | Yes | Terminated |

*See* Ex. 4, Jimmerson Fact-Finding; Ex. 2, SWA Corp Rep Depo, at 71:16-7; Ex. 6, Weaver Fact-Finding; Ex. 3, Parker Fact-Finding; Ex. 8, Def's Interrogatory Responses, 7-8.

This evidence shows Southwest makes its decisions on whether to terminate an employee who has an accident based on that employee's race.

When Parker first presented Jimmerson as a comparator during the EEOC process, Southwest argued Jimmerson was not a proper comparator because he immediately

reported his accident.   Ex. 7, SWA Position Statement, SWA 0643.   However, during discovery, Southwest was forced to produce its fact-finding report for Jimmerson's accident which conclusively states Jimmerson failed to immediately report.   *See* Ex. 4, Jimmerson Fact-Finding.   Faced with this evidence, Southwest changed its explanation for the differential treatment.   *See* Ex. 2, SWA Corp Rep Depo, 81:1-6.   Ignoring the plain language of BPOC 16, Southwest now asserts Jimmerson is not proper because he planned to report his accident and someone else reported it.

A reasonable jury could conclude that Southwest's shifting reasons for not terminating Jimmerson is evidence of untruthfulness.   Moreover, Southwest ignores the fact that, like Jimmerson, Parker had planned to report his accident as well.

Additionally, when Southwest was first presented with Weaver as a comparator, Southwest alleged he was not proper because his accident did not cause any damage.   Ex. 7, SWA Position Statement, SWA 0643.   Plaintiff discredited this explanation when Southwest's Corporate Representative testified that Southwest would terminate any employee who causes an accident and does not immediately report regardless of whether the accident causes damage.   *See* Ex. 2, SWA Corp Rep Depo, 42:14-20.   As a result of this testimony, Southwest changed its story to allege that Weaver was not fired because someone immediately reported the accident.   *See id.* at 88:5-14.   Again, these shifting explanations provide additional evidence of pretext.

Moreover, Plaintiff casts doubt on Southwest's allegation that as long as someone reports the accident no one will be fired by presenting evidence that Southwest terminated

two minority employees who reported their incidents immediately.  *See* Ex. 8, Def's Interrogatory Responses, 7-8.  If reporting were the key to lesser discipline, clearly Southwest would ***not*** have fired Hearns and Flores.  However, Southwest did indeed terminate both.

In sum, Plaintiff presents evidence that would allow a reasonable jury to conclude that the key difference between whether Southwest terminates an employee who causes an accident is race.

**C. <u>Indirect evidence of an environment permeated by race discrimination is both relevant and probative to whether Southwest's termination of Parker was motivated by race.</u>**

Evidence of a discriminatory culture is certainly relevant and probative.  *See Tratree v. BP North America Pipelines, Inc.*, 390 Fed. Appx. 386, 390 (5th Cir. 2010); *Polanco*, 78 F.3d at 979-80.

In an indirect evidence case, a plaintiff may rely on the circumstances surrounding the event.  *See id.* The context surrounding disparate treatment of employees matters.  It further allows a jury to doubt a proffered reason for termination and conclude the real reason was discrimination based on race.  *See id.*

Here, the evidence surrounding the circumstances of Southwest's termination of Parker show a workplace permeated by race discrimination.  Plaintiff has presented evidence of a workplace where Southwest management does not support diversity, someone fashioned a noose out of cord and hung it at a gate in a secured area and another noose was placed in a baggage cart, a racist flyer was distributed to promote a BBQ for

Southwest employees, and, although Southwest denies it, a whites-only breakroom existed. *See* Ex. 9, TWU Survey, Parker - 0320; Ex. 2, SWA Corp Rep Depo, 90:21-25, 91:1-5, 99:20-25, 100:1-6; Ex. 10, Noose; Ex. 11, Flyer; Ex. 1, Parker Depo, 161:14-21.

This context surrounding Southwest's disparate treatment of Parker and a White employee matters.   It further allows a jury to doubt Southwest's proffered reason for terminating Parker and conclude the real reason was discrimination based on race.

**D.   The Court must review this case *de novo* without reliance on a labor arbitration decision where race discrimination was not argued or decided.**

The U.S. Supreme Court has made it abundantly clear that federal courts should hear an employee's claims under Title VII *de novo* regardless of any labor grievance arbitration.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974).

> We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance arbitration clause of a collective bargaining agreement and his cause of action under Title VII.  The federal court should consider the employee's claim *de novo*.

*Id.*

"[A]n employee's contractual rights under a collective bargaining agreement are distinct from the employee's statutory Title VII rights."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 (1991).

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

*Gardner-Denver Co.*, 415 U.S. at 49-50.

At the labor arbitration related to this dispute, Parker was not represented by an attorney and no arguments regarding race discrimination were made. The labor arbitrator considered contractual rights under a CBA, not violations of federal anti-discrimination laws. Indeed, none of the evidence from the arbitration presented by Southwest has anything to do with race. *See* Dkt. No. 15-21 and 15-28.

Accordingly, given the requirement for *de novo* review, the Court must deny Defendant's argument for collateral estoppel.

## VI.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant's Motion for Summary Judgment be denied.

Respectfully submitted,


*/s/ Julie L. St. John*
Julie L. St. John (Attorney-in-Charge)
Texas Bar No. 24106460
S.D. Texas Bar No. 3139258
Robert J. Wiley*
Texas Bar No. 24013750
S.D. Texas Bar No. 596499
*Board Certified in Labor and
Employment Law by the Texas Board of
Legal Specialization*

WILEY WHEELER, P.C.
1651 Richmond Ave.
Houston, Texas 77006
Telephone:  (713) 337-1333
Facsimile:  (713) 337-1334
jstjohn@wiley-wheeler.com

FOR THE PLAINTIFF


## CERTIFICATE OF WORD COUNT

As required by Rule 18(c) of this Court's procedures, I hereby certify that the document contains 3,877 words, excluding the parts of the document that are exempted by Rule 18(c).

*/s/ Julie L. St. John*
Julie L. St. John

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2020 I served a copy of the foregoing on counsel for Defendant via the Court's CM/ECF system.

*/s/ Julie L. St. John*
Julie L. St. John
