**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMEL PARKER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. A. No. 4:18-cv-03334 |
| | § | |
| SOUTHWEST AIRLINES CO., | § | Jury Trial Demanded |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION IN LIMINE**

Defendant Southwest Airlines Co. ("Southwest") respectfully requests this Court enter an Order *in limine*, before the beginning of voir dire examination of the jury and before the presentation of any evidence, as follows:

**BRIEF STATEMENT OF THE CASE**

This is an employment case. Plaintiff Jamel Parker is a former Southwest Ramp Agent at the Houston-Hobby Airport. He asserts a claim for disparate-treatment discrimination based on his race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") against Southwest regarding his discharge in April 2017.

As the nation's largest domestic air carrier, Southwest takes its responsibility for the safety of its customers and employees very seriously. In ensuring its employees act in accordance with this priority, Southwest has in place a work rule requiring its ground operations employees immediately report accidents and/or incidents resulting in property damage. This work rule makes clear that failure to immediately report such an accident

and/or incident warrants immediate termination. On April 21, 2017, while at Gate 3 at the Houston-Hobby Airport, Plaintiff was involved in an accident and/or incident resulting in property damage that he admits he ***never*** reported. Southwest conducted a fact-finding meeting regarding the accident and/or incident on April 25, 2017, with Plaintiff. On April 28, 2017, Plaintiff was advised of the termination of his employment based on his violation of this work rule. Now, before this Court, is Plaintiff's Title VII and Section 1981 race discrimination claim, in which he alleges the termination of his employment was in violation of these statutes.

## **GROUNDS**

Southwest moves the Court to order Plaintiff, his attorneys, witnesses, and other representatives not to mention or bring before the jury, either directly or indirectly, upon voir dire, reading of the pleadings, statement of the case, interrogation of witnesses, argument, or objections before the jury any of the following matters, without first having called such matters to the Court's attention, out of presence or hearing of the jury, and obtained a favorable ruling as to the admissibility of any such matters. Southwest also moves the Court to order Plaintiff, his attorneys, witnesses, and representatives not to prove, attempt to prove, refer to, interrogate, mention, imply, or testify to at any time, in any way, shape or form in the presence of the jury panel or jury, or attempt to place before the jury panel and jury, either directly or indirectly, any of the following matters without first having called such matters to the Court's attention, out of the presence or hearing of the jury, and obtained a favorable ruling as to the admissibility of any such matters. Permitting interrogation of witnesses, comments to jurors or prospective jurors,

or offers of evidence concerning any of these matters would prejudice the jury, and sustaining objections to such questions, statements, or evidence will not prevent prejudice and will reinforce the development of questionable evidence.

The matters of information made the subject of Southwest's Motion *in Limine* are as follows:

**1.**      Reference, comments, testimony, or other evidence relating to a "whites-only" breakroom at the Houston-Hobby Airport, as referenced in Plaintiff's Original Complaint ("Complaint"). Dkt. No. 1., p. 1. **Plaintiff testified at his deposition in this case that he never saw a sign about this breakroom, never went in the breakroom, and no white person ever told him about this breakroom**:

> Q.    All right.  You can't give us a single white
> employee or non-black employee who told you, This is a
> whites' break room or whites-only break room?
> A.    No.
> Q.    Okay.  And certainly you saw no kind of signs
> or postings or anything like that saying, This is a
> whites-only break room?
> A.    No.

*See* **Exhibit 1**, Plaintiff's Deposition, 162:2-162:22. **He also testified that he never tried to go into this breakroom:**

> Q.    Okay.  Had you ever tried to go into that
> break room?
> A.    No.
> Q.    Did you ever actually go into the break room?
> A.    No.

*Id.* at 161:22-162:1. In fact, the only people who mentioned this breakroom (again, which Plaintiff never went into) to Plaintiff were two Black employees. *Id.* at 95:19-99:5.

Plaintiff testified that he never filed a complaint or other grievance with Southwest regarding this alleged breakroom.

> Q.    All right.  Did you ever file any kind of
>        grievance or complaint about an alleged whites-only
>        break room?
> A.    No.
> Q.    Never?
> A.    No.
> Q.    Okay.  You ever raise it to the attention of
>        anybody in management?
> A.    No.

*Id.* at 98:20-99:3. Reference, commentary, testimony, or other evidence regarding this alleged breakroom must be excluded because it is hearsay. *See* Fed.R.Evid. 801, 802.

Additionally, this "evidence" is irrelevant and must be excluded at trial because it does not specifically pertain to the individuals who made the decision to terminate Plaintiff's employment. Such "culture" evidence is relevant and admissible only if it specifically pertains to the decision-maker(s) in the disputed employment actions. *See Tratree v. BP North America Pipelines, Inc.*, 390 Fed. Appx. 386, 390 (5th Cir. 2010) (affirming district court's exclusion of racial epithets not related to the decision-maker).

In *Tratree*, the district court excluded evidence offered by the plaintiff regarding racial epithets used at the defendant's workplace years prior to the actions giving rise to the plaintiff's employment discrimination claim. *Id.* In excluding these claims, the court reasoned that the employees, supervisors, and managers had changed several times since the time period in which these epithets were allegedly used; thus, any minimal probative value of this evidence would be substantially outweighed by the danger of unfair prejudice. *Id.*; *see also* Fed.R.Evid. 403.

Here, any reference, allusion, commentary, suggestion, or other evidence regarding the alleged "whites only" breakroom at the Houston-Hobby Airport is entirely irrelevant to Plaintiff's lawsuit in this case, which is based solely on the termination of his employment with Southwest in April 2017. *See* **Exhibit 1**, Plaintiff's Deposition, 233:18-25 (testifying that the only alleged discriminatory action at issue in this lawsuit is the termination decision). This evidence offered by Plaintiff is even more prejudicial and confusing than that offered in the *Tratree* case because Plaintiff has no personal knowledge or experience of this alleged breakroom. Thus, any testimony by Plaintiff regarding this breakroom is inadmissible hearsay. Even beyond Plaintiff's lack of personal knowledge,  Plaintiff has no basis to claim that any of the decision-makers regarding the termination decision were involved in this alleged breakroom. As such, any evidence regarding this alleged "whites only" breakroom should be excluded, as it is irrelevant, prejudicial, and inadmissible hearsay. *See* Fed.R.Evid. 401, 403, 602, 802.

**2.**     Reference, comments, testimony, or other evidence relating to alleged "nooses" found at the Houston-Hobby Airport. In Plaintiff's Complaint, Plaintiff references an alleged "noose" made of bungee cords found at a Southwest gate at the Houston-Hobby Airport. Dkt. No. 1, p. 1. During Plaintiff's deposition in this case, Plaintiff referenced another alleged "noose" incident. *See* **Exhibit 1**, Plaintiff's Deposition, 215:12-216:25. However, **Plaintiff testified that he does not have any personal knowledge of any "noose" at a Southwest gate at the Houston-Hobby Airport**. Plaintiff testified that the never saw a "noose" or a picture of a "noose" during his employment with Southwest:

Q.     Did you ever see a noose while you were

> employed at Southwest Airlines, Mr. --
> A.      Did I --
> Q.      -- Parker?
> A.      -- ever see?  No.
> Q.      Did you ever see a picture of a noose while
>         you were employed at Southwest Airlines?
> A.      No.

*Id*. at 100:20-101:2. Further, he testified that he saw pictures of the "noose" only *after* the

end of his employment with Southwest.

> Q.      Is it your understanding that a noose was
>         found at Gate 45?
> A.      Yes.
> Q.      But you weren't employed at the time that that
>         was found, correct?
> A.      No.
> Q.      It was already -- you were already fired by
>         the time that noose was found, right?
> A.      Yes.
> Q.      All right.  And I think you said before, you
>         never saw a noose hanging anywhere at Southwest, right?
> A.      That's correct.

*Id*. at 211:24-212:10. Moreover, these alleged "noose" incidents occurred only after

Plaintiff's employment with Southwest ended. *Id*.

Where a plaintiff has no personal knowledge of the matter and/or did not

personally perceive it, district courts have excluded evidence relating to a "noose" under

the Federal Rules of Evidence. *See*, *e.g*., *Davis v. New York Dep't of Corrections*, 256

F.Supp.3d 343 (S.D.N.Y. 2017) (in context of Title VII claim, excluding testimony

regarding noose hung in a work vehicle because it was not perceived by the employee

during his employment); *Swiatek v. Bemis Co., Inc*., Civ. A. No. 08-6081 (TJB), 2011

WL 4753417, at *7 (D.N.J. Oct. 7, 2011) (excluding evidence of a noose that post-dated

the plaintiff's employment with the company and did not involve any direct allegations connecting the noose to the decision-maker).

Here, Plaintiff testified that he never saw a "noose" during his employment with Southwest, learned about these "nooses" only after his discharge from Southwest, and that these "noose" incidents occurred only after his discharge from Southwest. Thus, by his own testimony, Plaintiff has no factual basis to link the alleged "nooses" to the only employment decision at issue (his termination). *See* **Exhibit 1**, Plaintiff's Deposition, 100:20-101:2, 215:12-216:25. Accordingly, any evidence regarding the "nooses" should be excluded at trial. *See* Fed.R.Evid. 401, 403, 602, 802.

**3.**     Reference, comments, testimony, or other evidence relating to a union survey asking Southwest Ramp Agents about their satisfaction with Southwest. Plaintiff produced in discovery a union survey taken in November 2018. *See* Dkt. No. 16-1, Exhibit 9. This document, and any reference, comment, or testimony relating to this alleged "union survey" should be excluded for several reasons.

It is irrelevant to Plaintiff's claim disputing his discharge in April 2017. The document reflects that this survey was conducted during the summer and fall of 2017, months after the termination of Plaintiff's employment, and the survey "results" document was released in November 2018. Plaintiff was not an employee of Southwest nor was he a member of this union at the time the survey was conducted or released. Additionally, this document reflects that union members at Southwest locations nationwide were polled regarding their "feelings" about Southwest. In other words, Southwest employees who worked at different locations, with different job titles, with

different supervisors, and with different work histories all submitted their opinion in response to this survey. As the *Tratree* decision cited above makes clear, this type of "culture" evidence which has no bearing on the plaintiff's employment decision at issue is inadmissible because it is irrelevant and highly prejudicial. *Tratree*, 390 Fed. Appx. at 390. Because Plaintiff did not participate in the survey giving rise to this November 2018 document, because it contains inadmissible hearsay regarding other Southwest employees' opinion at other non-Houston Southwest locations, and because it does not specifically relate to the decision-makers regarding Plaintiff's discharge from Southwest's Houston-Hobby station, this document must be excluded. *See* Fed.R.Evid. 401, 403, 802, 901.

**4.**     Reference, comments, testimony, or other evidence relating to a "Station BBQ" at the Houston-Hobby Airport. Plaintiff produced in discovery a flyer referencing a "Station BBQ." *See* Dkt. No. 16-1, Exhibit 11. This document is unauthenticated, lacks foundation, prejudicial, and inadmissible hearsay.

First, this document bears no Southwest logo, watermark, or any other notation reflecting that it was issued by or on behalf of any agent or authorized representative of Southwest. In fact, it is not clear who created this document, who issued this document, or where it came from. Because it cannot be authenticated, it is inadmissible. *See* Fed.R.Evid. 901. Second, even if it could be authenticated, there is no indication that this flyer is related in any way to the decision to terminate Plaintiff's employment or the decision-makers involved in that decision. Indeed, this document references a "Station BBQ" on "Wednesday, April 18th." Since 2013 (the first year of Plaintiff's employment

with Southwest), the only year on which April 18th has fallen on a Wednesday is 2018. Plaintiff was not employed by Southwest in 2018. Accordingly, this document was created *after* Plaintiff's employment with Southwest was terminated, has no bearing on the separation of his employment in April 2017, and must be excluded because it is unauthenticated, irrelevant, and prejudicial. *See* Fed.R.Evid. 401, 403, 901.

**5.** Testimony from Plaintiff regarding Plaintiff's identified comparators in his EEOC Charge of Discrimination and Complaint. In both the Charge and Complaint, Plaintiff identified two alleged comparators who he claims were treated more favorably than him: Burke Jimmerson and Scott Weaver. However, Plaintiff testified at his deposition that he has **no personal knowledge** about either of these individuals' policy infractions with Southwest, the disciplined issued by Southwest, or any other pertinent details. Thus, this is inadmissible hearsay and hearsay within hearsay evidence. *See* Fed.R.Evid. 801, 802, 805.

Regarding Scott Weaver, Plaintiff testified that he was not present for Weaver's incident; did not watch the camera footage regarding the incident; did not speak with Weaver regarding the incident; that the union representative told Plaintiff about this incident; did not know when Weaver's incident occurred; was told that Weaver was issued a Letter of Instruction; and believed that Weaver did not report the incident because someone told Plaintiff that that was the case. *See* **Exhibit 1**, Plaintiff's Deposition, 188:22-190:25. In fact, Plaintiff *admits* that everything about the Weaver incident is just something that someone told him. *Id.* at 189:25-190:3. As for Burke Jimmerson, Plaintiff testified similarly, indicating that his knowledge regarding

Jimmerson's incident was also based entirely on what someone told him or what he read in a safety report. *Id.* at 194:6-10.

This testimony is the textbook definition of inadmissible hearsay and hearsay within hearsay. *See* Fed.R.Evid. 801, 802, 805. Plaintiff has no personal knowledge of either Jimmerson's Weaver's incidents, the events leading up to and following the incidents, Jimmerson's or Weaver's perceptions of the incidents; or the discipline issued to either. District courts routinely exclude a plaintiff's testimony regarding alleged comparators that is based upon hearsay and hearsay within hearsay. *See*, *e.g., Potts v. United Parcel Service*, Civ. A. No. 3:11-CV-2407-L, 2013 WL 4483080, at *7 (N.D. Tex. Aug. 22, 2013) (excluding comparator evidence based on the plaintiff's testimony that everything he knew about the identified comparators was through "shop talk" and that he didn't know or personally perceive those details); *Mable v. Navasota Indep. Sch. Dist.*, Civ. A. No. 09-CV-00123, 2010 WL 11453634, at *10 (S.D. Tex. Aug. 18, 2010) (excluding hearsay statements relating to alleged comparators receiving more favorable treatment); *Evans v. District of Columbia*, 219 F.Supp.3d 99, 111 (D.D.C. 2016) (finding the plaintiff's testimony inadmissible regarding his alleged comparators' actions and/or discipline); *Albert v. Racetrack Petroleum, Inc.*, No. 10-60480-CIV, 2011 WL 65885, at 82 (S.D. Fla. Jan. 10, 2011) (deeming inadmissible the plaintiff's evidence based on hearsay of other employees who were treated more favorably). Because Plaintiff has nothing but speculation and hearsay to support his testimony regarding Jimmerson or Weaver, Plaintiff (or anyone else without personal knowledge) should be precluded from testifying as to either at trial. *See* Fed.R.Evid. 403, 602, 802.

**6.**     Reference, comments, testimony, or other evidence relating to alleged comparators not alleged in Plaintiff's EEOC Charge of Discrimination and Complaint, or not relied upon by Plaintiff during his labor arbitration. In Plaintiff's EEOC Charge, Plaintiff identified two alleged comparators who he claims were treated more favorably than him: Burke Jimmerson and Scott Weaver. *See* **Exhibit 2**, Charge of Discrimination. Plaintiff identifies only those two individuals in his Complaint filed with the Court, and also identified only those two individuals at his deposition. Dkt. No. 1, ¶¶20-38. Thus, only non-hearsay, authenticated evidence regarding either Jimmerson or Weaver can be introduced at trial. *See Deere & Co. v. Johnson*, 271 F.3d 613, 621-22 (5th Cir. 2001) (issue not in the pleadings or pretrial order not properly raised in trial court if not tried by consent or implied consent).

Plaintiff may attempt to bring in testimony, exhibits, reference, or other evidence relating to other individuals who he claims were treated more favorably than him. Notwithstanding the fact that Plaintiff failed to identify those comparators in his Charge or Complaint, evidence regarding these new comparators must be excluded because they are not valid comparators as a matter of law. As set forth in Southwest's Memorandum of Law filed contemporaneously with this Motion, the standard of establishing "similarly situated" such that an accurate comparison may be drawn between Plaintiff and any of these individuals is ***extremely*** narrow. *Lee v. Kansas City Southern. Ry. Co*., 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their

employment status determined by the same person, and have essentially comparable violation histories."); *Hockman v. Westward Comm'ns, LLC*, 282 F.Supp.2d 512, 527-28 (E.D. Tex. 2003). Employees with different work responsibilities, supervisors, capabilities, work rule violations, or different disciplinary histories are not "nearly identical." *Lee*, 574 F.3d at 260. Critically, the conduct that drew the adverse employment action must be "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Id.*

The evidence will reflect that any other alleged comparator (i.e., Eric Flores or James Hearns) did not commit a violation of the same rule as Plaintiff, the underlying incident was not "nearly identical" to that involving Plaintiff, and neither were issued discipline by the same decision-makers as Plaintiff. Thus, these individuals are not valid comparators and presentation of this evidence is prejudicial to Southwest, will confuse the jury, and will mislead the jury as to the issues in this case. This evidence must be excluded. *See* Fed.R.Evid. 401, 403.

**7.**     Evidence or testimony regarding claims based on Plaintiff's employment not included in Plaintiff's Complaint. The Court should exclude evidence of any claims not raised in the Complaint. Claims outside the scope of the pleadings are not properly before the Court and Southwest cannot be on notice that any such claim is being raised. *Deere & Co. v. Johnson*, 271 F.3d 613, 621-22 (5th Cir. 2001) (issue not in the pleadings or pretrial order not properly raised in trial court if not tried by consent or implied consent). Specifically, Plaintiff testified under oath that the only employment decision which he disputes, and which is the subject of his lawsuit against Southwest, is the April 2017

termination decision. *See* **Exhibit 1**, Plaintiff's Deposition, 233:18-25. Thus, any reference, comment, or testimony regarding other, non-termination employment actions or decisions that Plaintiff contends were discriminatory should be excluded. *See* Fed.R.Evid. 401, 403.

**8.**     Evidence or testimony regarding claims not included in the Charge of Discrimination that Plaintiff filed with the EEOC. Plaintiff has failed to exhaust his administrative remedies with respect to any other claim. A court only has jurisdiction over a claim that is based upon conduct like or reasonably related to the charge's allegations. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). *See* Fed.R.Evid. 401, 403.

**9.**     Any reference, comment, document, or testimony by any current or former Southwest employee who was not involved in making the decision to terminate Plaintiff's employment with Southwest, concerning Southwest's alleged motivation for making such employment decision. In discovery, Plaintiff produced a number of Facebook conversations with former and/or current Southwest employees regarding his discharge and his lawsuit against Southwest. None of these employees were the decision-makers regarding Plaintiff's discharge, and none of them were involved in that decision. To the extent any of these documents are offered into evidence by Plaintiff to support his belief that his discharge was discriminatory, those documents must be excluded. Any such evidence by random Southwest employees is based on speculation or hearsay, and not based on personal knowledge. Such testimony would likely confuse and mislead the jury and unfairly prejudice Southwest. The jury would likely attach undue significance to the

testimony because of such individual's position as a current or former employee of Southwest. *See* Fed.R.Evid. 401-402, 403, 601-602, 801-802.

Additionally, because some of these Facebook conversations reflect other employees' sentiments about their experience at Southwest—which has no relation to Plaintiff's discharge and the decision-makers regarding this decision—these documents should be excluded at trial. Such evidence does not constitute competent evidence of discrimination or other unlawful conduct. *Rubenstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.2d 392, 400-01 (5th Cir. 2000) (for a comment to constitute competent evidence of discrimination, it must be, among other things, proximate in time to the complained of adverse employment decision, and made by a decision-maker or an individual with authority over the employment decision at issue), *cert. denied*, 532 U.S. 937 (2001). Accordingly, any such exhibit, reference, comment, or testimony should be excluded.

**10.**    Any allegation, suggestion, implication, or evidence that Southwest has been sued in any other action, settled any claim, and/or that any charge or complaint of discrimination, harassment, or retaliation has been filed against Southwest by any person other than Plaintiff. The facts, circumstances, or outcome underlying other lawsuits or charges against Southwest are irrelevant to the facts of the present lawsuit. Accordingly, any attempt to mention or reference third-party lawsuits or charges would likely confuse the jury and would serve only as an attempt to substantially prejudice the jury against Southwest. *See* Fed.R.Evid. 401-403, 404(b), 601 and 602; *Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 302 (5th Cir. 2000) (trial court abuses its discretion when it admits

anecdotal testimony from other employees about alleged discrimination against them),

cert. denied, 531 U.S. 1145 (2001); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127 (5th Cir.

1983) (evidence of how other employees were discriminatorily treated properly excluded

because admission of this evidence had only attenuated relevance and would unduly

prolong trial).

**11.**     Evidence or testimony that Southwest allegedly discriminated, harassed,

retaliated, or otherwise engaged in unlawful or unfair acts against current or former

employees other than Plaintiff. This includes, but is not limited to, testimony by any

current or former Southwest employee. *See* Fed.R.Evid. 401-403, 404(b), 601 and 602;

*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (trial court abuses

its discretion when it admits anecdotal testimony from other employees about alleged

discrimination against them), cert. denied, 531 U.S. 1145 (2001); *Plemer v. Parsons-

Gilbane*, 713 F.2d 1127 (5th Cir. 1983) (evidence of how other employees were

discriminatorily treated properly excluded because admission of this evidence had only

attenuated relevance and would unduly prolong trial). *See* Fed.R.Evid. 401, 403, 602,

802.

**12.**     The EEOC file of Plaintiff (as a single offering) or any other current or former

employees of Southwest. Note that Southwest does **not** seek to exclude Plaintiff's Charge

of Discrimination or the Notice of Right to Sue issued by the EEOC, but rather, the *entire*

EEOC file as a single exhibit. The EEOC file as a whole is not within the exception to the

hearsay rule provided by Federal Rule of Evidence 803(8)(B) (or any other exception).

"Neither under the precedents nor under Rule 803(8)(B) is the entire EEOC file

admissible." *See McLure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400, 402 (5th Cir. 1985); *accord Cruz v. Aramark Services, Inc.*, 213 Fed. Appx. 329, 332, 2007 WL 98358, at *2 (5th Cir. 2007) ("[t]he business records hearsay exception … does not apply to the underlying material collected during the EEOC investigation."); *Harris v. Fresenius Medical Care*, No. H-04-4807, 2006 WL 2065313, at *12 (S.D. Tex. Jul. 24, 2006) ("The pile of other EEOC file materials includes a mixture of letters, some Fresenius documents, and other items" which "contain multiple levels of hearsay."). *See* Fed.R.Evid. 401, 403, 802.

**13.**     Any documents, reference, comments, testimony, and/or mention of any allegedly discriminatory or racially offensive comments or remarks by any current or former Southwest employees other than comments or remarks that Plaintiff alleges he directly heard while working at Southwest (and disclosed during discovery in this case). During his deposition, Plaintiff testified that he was not subject o any inappropriate, discriminatory, or harassing remarks during his employment at Southwest. *See* **Exhibit** 1, Plaintiff's Deposition, 125:1-125:8, 135:8-135:24. Any new reference to alleged comments or remarks that Plaintiff never heard during his employment with Southwest are hearsay and irrelevant (particularly where those comments have no connection to the employment decision at issue and the decision-makers), and would likely confuse the jury and unfairly prejudice Southwest. *See* Fed.R.Evid. 401-402, 403, 802.

**14.**     Advising the jury not to worry who will pay the judgment or whether it is ever paid, or words to that effect. *See* Fed.R.Evid. 402-403.

**15.**     Any testimony or evidence that in any manner calls attention to the difference in

financial ability of the parties. Any reference to any Southwest's wealth for the purposes of prejudicing the jury against Southwest should be excluded for the reason that such facts are completely immaterial to the issues involved, and at the same time the mere making of such references would create unfair prejudice to Southwest. Further, any reference to insurance coverage which is not a factor in this case or the assets/financial ability of Southwest to pay a judgment should also be excluded. *See* Fed.R.Evid. 403. All parties are entitled to be treated equally before the Court without regard to relative wealth or poverty, or corporate status. *Loose v. Offshore Navigation, Inc*., 670 F.2d 493 (5th Cir. 1982); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).

**16.**    The calling of witnesses, either expert or lay, other than those timely disclosed by way of Expert Witness Reports, Answers to Interrogatories, or Pretrial Disclosures (i.e., Witness Lists).

**17.**    Any testimony or argument suggesting that Southwest, through its attorney, asserted objections or claims of privilege during discovery. *See* Fed.R.Civ.P. 26, 37; *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).

**18.**    Any attempt to elicit testimony from any of Southwest's employees about communications with any of Southwest's lawyers. *See* Fed.R.Evid. 501.

**19.**    Any mention of the probable testimony of a witness who is absent, unavailable, not called to testify in this case, or not allowed to testify.

**20.**    Any allegation, suggestion, implication, or evidence regarding the reason(s) why any potential witness is not available for trial, or why any party has not presented evidence from that witness. The availability of a witness for trial and a party's trial

strategy are not relevant to the facts at issue in this lawsuit and would likely confuse the jury and would serve only as an attempt to substantially prejudice the jury against Southwest. *See* Fed.R.Evid. 401, 403.

21.    Any to request for Southwest's attorneys to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury.

22.    Any hearsay comments attributed to any unidentified witness not subject to cross-examination. *See* Fed.R.Evid 801, 802.

23.    That this Motion has been filed or the Southwest's counsel has in any manner attempted to limit or restrict the evidence.

24.    Any reference to alleged front pay. Because front pay is an equitable remedy, only the Court, not the jury, can decide the issue of whether Plaintiff may be entitled to front pay, and in what amount. *See Reynolds v. Octel Comms. Corp.*, 924 F. Supp. 743, 748 (N.D. Tex. 1995) (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)). Accordingly, such evidence would be irrelevant, unduly prejudicial and should be excluded. *See* Fed.R.Evid. 401-404.

25.    Evidence or testimony of Plaintiff's alleged lost wages and/or benefits as a result of the termination of his employment. Back pay is an equitable remedy that is within the sound discretion of the district court in Title VII cases. "Unlike an award of compensatory damages, [an] award[] of . . . back pay under Title VII [is] decided by the district court." *Gamboa v. Henderson*, 240 F.3d 1074, 2000 WL 1835289, at *4 (5th Cir. 2000) (unpublished), citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 n.19 (5th Cir. 1998); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394–95 (5th Cir. 2003)

("Because back pay is an equitable remedy, the district court . . . can decide the back pay issue itself absent the parties' agreement to the correct amount.") (internal quotation marks and citations omitted). Plaintiff has a duty to mitigate damages by finding substantially equivalent employment. *See Giles v.  General Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001).

This is especially important in this case, because Plaintiff testified that there was a time period (of at least 6-8 months following his discharge from Southwest in April 2017) during which he ***chose*** not to work or look for employment.

> Q.    Okay.  And is it true that you didn't even
>        start looking for a job until after September of 2017?
> A.    I believe so.  I'm not exactly sure when I
>        started actually looking for work.
> Q.    Okay.  Certainly up until the time your
>        arbitration took place in September of 2017, you had not
>        started looking for a job, correct?
> A.    No, I didn't.
>        **********
> Q.    Okay.  Certainly there was a time period that
>        you took off and just decided not to work or look for a
>        job after you got fired, correct?
> A.    Yes.

*See* **Exhibit 1,** Plaintiff's Deposition, 36:4-37:15. Thus, by his own testimony, Plaintiff admits that he failed to mitigate. Where a plaintiff fails to mitigate damages, a district court acts within its discretion to deny back pay. *West,* 330 F.3d at 492-93 (5th Cir. 2003) (affirming district court's decision to deny back pay because the plaintiff had little to no evidence of a job search following his discharge from the defendant). As such, any mention, reference, suggestion, comment, or other testimony regarding his alleged lost wages is irrelevant and prejudicial to Southwest. *See* Fed.R.Evid. 401, 403.

19

26.    Evidence or testimony that Plaintiff suffered mental anguish or emotional distress as a result of the termination of his employment. With respect to mental anguish or emotional distress damages, Plaintiff testified at his deposition that he never saw any doctors, counselors, ministers, or any other professionals for issues arising out of or relating to his employment with Southwest:

> Q.    [D]id you ever go see any doctors
>        or counselors and say, Oh, my God, I'm working in a
>        place that has a whites-only break room?
> A.    No.
> Q.    Nothing?
> A.    No.
> Q.    Never talked to anybody about it?
> A.    I mean, I've talked to friends and family
>        about it, but I didn't actually go see a, quote,
>        unquote, professional.
> Q.    Okay.  Did you ever go after your employment
>        ended, go see any professionals about any kind of
>        mental-anguish damages?
> A.    No, I couldn't afford it.

*See* **Exhibit 1**, Plaintiff's Deposition, 245:10-246:19. Plaintiff testified that any alleged "bad days" due to the termination of his employment with Southwest were due to his own choice to go to the media and give TV interviews about his lawsuit, including interviews about topics on which he had no personal knowledge (e.g., the "breakroom").

> Q.    Right.  And you never went and challenged that
>        at all; you never made a complaint about it; and you
>        never, yourself, went to the -- to that break room,
>        yourself?
> A.    I did not.
> Q.    Okay.  And that's what you gave the news
>        conference about?
> A.    Yes.

*See* **Exhibit 1**, Plaintiff's Deposition, 253:11-255:5. To be entitled to mental anguish damages in a cause of action under Title VII, a plaintiff must show a discernible injury to his mental state and submit evidence regarding nature and extent of alleged harm. *See E.E.O.C. v. WC&M Enterprises, Inc*., 496 F.3d 393 (5th Cir. 2007). Because Plaintiff does not have any evidence that his employment with Southwest or the termination of his employment with Southwest created any mental anguish, such evidence should be excluded. *See* Fed.R.Evid. 401, 403, 602.

27.    No attorney, party or witness shall refer to the size of the party's law firms nor the cost of prosecuting or defending this case.  Similarly, no attorney, party or witness shall characterize the other party's law firm in any way.  Finally, no attorney, party or lawyer shall discuss how or when the parties retained counsel. However, during voir dire counsel may ask questions about opposing counsel and their firms including their offices and lawyers. *See* Fed.R.Evid. 403. *See also Fineman v. Armstrong World Indus., Inc*., 980 F2d 171, 206-09 (3d Cir. 1992) ("vituperative references" to opposing counsel will not be tolerated); *Draper v. Airco, Inc*., 580 F2d 91, 95 (3d Cir. 1978) (evidence of the parties' poverty or wealth is inadmissible).

28.    Any comment that attempts to impose liability on or arouse prejudice against Southwest simply because it is a corporation. *See* Fed.R.Evid. 403.

29.    Any comment to the jury that the Court can reduce the amount of the jury's award.

30.    Any suggestion, implication, or reference that Plaintiff is entitled to costs and/or attorney's fees in the event Plaintiff prevails on liability. *See* Fed.R.Evid. 403.

**31.**     Any reference to statutes or statements of the law, other than that regarding the burden of proof and the legal definitions counsel believe to be applicable, before the Court rules on the law applicable to this case. *See* Fed.R.Evid. 403.

**32.**     Any question, statement, argument, or reference that elicits opinions of law from any witness, as this is to be given to the jury only by the Court and any such reference or quotation in the presence of the jury would materially prejudice Southwest and give undue emphasis and weight to the Plaintiff's contentions. *See* Fed.R.Evid. 403, 602, 701.

## <u>CONCLUSION</u>

Defendant Southwest Airlines Co. asks that this Motion be granted, and asks the Court to instruct Plaintiff, his counsel, and witnesses not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any of the matters listed above without first obtaining a ruling from the Court outside the presence and hearing of the jury.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**
   **SMOAK & STEWART, P.C.**

*/s/ Gauri D. Nautiyal*
Michael D. Mitchell
USDC SD/TX: 15330
Texas SBN.: 00784615
One Allen Center
500 Dallas St., Ste. 3000
Houston, Texas 77002
713-655-5756 (Phone)
713-655-0020 (Fax)
michael.mitchell@ogletree.com

**ATTORNEYS FOR DEFENDANT**

**OF COUNSEL:**

Gauri D. Nautiyal
USDC SD/TX: 3150790
Texas SBN 24117921
One Allen Center
500 Dallas St., Ste. 3000
Houston, Texas 77002
713-655-0855 (Phone)
713-655-0020 (Fax)
gauri.nautiyal@ogletree.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021, the foregoing document was electronically transmitted to the Clerk of the Court using the ECF system of filing. A Notice of Electronic Filing will be sent by operation of the ECF system to the following counsel of record:

Julie L. St. John
Robert J. Wiley
Kalandra N. Wheeler
Fadi Yousef
WILEY WHEELER, P.C.
1651 Richmond Ave.
Houston, Texas 77006

**ATTORNEYS FOR PLAINTIFF**

*s/ Gauri D. Nautiyal*
Gauri D. Nautiyal